At this time we'll hear Scrimo v. Lee. May it please the court, my name is Randall Unger and I represent Mr. Scrimo on this appeal. Mr. Scrimo was denied a fair trial by the trial court's preclusion of important exculpatory evidence which in turn denied him his fundamental right to present a complete defense to the charges. In addition, he was also denied his Sixth Amendment right to effective assistance of counsel due to his trial attorney's failure to explain why the significant evidence that was excluded should not have been excluded. Your Honor, the defense in this case was simple and obvious. John Cain, the only eyewitness, murdered the victim, Ms. Williams, because she could not pay him for the drugs that he had supplied her with. Mr. Cain's DNA, his fingerprints were found at the crime scene. On the other hand, no physical or forensic evidence tying Mr. Scrimo to the crime scene were recovered. Cain lied to the police when he was initially questioned by them, denied having been with the victim, Ms. Williams, on the night of the murder, only told the police that Mr. Scrimo had murdered Ms. Williams when the police later confronted him a few weeks after that and told him that he'd been seen earlier by several witnesses at a club with Ms. Williams and that his DNA and fingerprints were found inside Ms. Williams' apartment. Then and only then did he inculpate Mr. Scrimo. In addition to that, Cain admitted that he had had Ms. Williams, the victim, perform oral sex on him on five prior occasions and that on the very night of the murder, just shortly before the murder was committed, she had performed unconsummated oral sex on him at that time. All of these pieces of evidence pointed to Cain and Cain only and not to Mr. Scrimo. What about the other evidence, though? The testimony by Quinn that she recognized him arguing with a woman outside of her apartment that night, late in the evening, 4 o'clock in the morning? Yes. And what about the 7-Eleven employee who testified? It was pretty compelling that she's the only one that smokes these cigarettes. It must be for her. Yeah, it is, but don't tell my wife that I'm going back there. It's pretty compelling. Well, there was consciousness of guilt evidence. I think that's what the Court is really talking about. The fact that Mr. Scrimo initially lied to the police, denied having anything to do with it. I get that, too, but I'm also not just consciousness of guilt. His statements got in that were consciousness of guilt, or at least the jury could conclude that. But there was other testimony other than Cain's testimony that put him in the apartment and sent him back after the 7-Eleven with the beer and the cigarettes, right? Yes, but again, when you're talking about Mr. Scrimo's denial of having gone to the 7-Eleven or purchased beer or cigarettes, that's really consciousness of guilt, which is generally considered weak evidence in terms of proving a defendant's guilt. But what about the guy who worked at 7-Eleven who testified? He recognized him because he lived nearby. He came in almost every day, came in at 4 o'clock in the morning, bought a case of beer and cigarettes for himself or maybe for Cain, but also her particular cigarettes, and then the clerk also gave him an item, too, in case they were going to have sex, right? That was the store clerk's idea. That was not something that was requested by Mr. Scrimo. It was kind of thrown in to the testimony. And at this stage, obviously, we're not contending that Mr. Scrimo didn't go to the 7-Eleven, didn't purchase beer and cigarettes. The question is really what did he then do with them. Did he go back to the apartment and then kill Ms. Williams, or did he simply get them because Cain had asked him to do so, delivered them to him, and then left and went home? There was really no evidence other than Cain's testimony that Mr. Scrimo had ever even been inside the victim's apartment. In any event, you're not arguing it's constitutionally insufficient evidence. As I understand it, your merits argument is that a defense was precluded. Correct. Whether there's evidence of his guilt is not—you're not disputing that, are you? Oh, no. There's no issue before this Court regarding sufficiency of the evidence. That's what I thought. What we're submitting is the verdict very likely would have been different, and by that, of course, more favorable to Mr. Scrimo, had the excluded evidence been allowed in. The excluded evidence—I'm sorry. Do you want to pursue that topic? No, but the excluded evidence was excluded by the state court judge on the basis of state court evidentiary rules. Well, yes, but I don't think we can just chalk this up to mere state evidentiary misfires. We're talking about a Sixth Amendment right to present a complete defense. But how convincing would it have been? The evidence would have been bring out another witness to show that he was a drug dealer, he had sold to Williams in the past, and one time he apparently choked a woman because of a dispute over a payment. Yes. How compelling is that, that he killed her rather than—that Cain killed her rather than Scrimo? The choking—the similarity between what happened to the victim, Miss Williams, and what Cain did to another female customer who was dissatisfied with the drugs he sold her. How long ago was that incident? Two years ago. Yeah, I'm not sure how long— It was a substantial period of time. Well, I don't know how many women you need to choke in order to show that that's your M.O. when you don't like the way a customer is treating you, you choke her. So whether it was a day before or two years before, I think the jury would have been impressed with that type of evidence, say to themselves, hey, this is a guy who chokes women who buy drugs from him. I don't think that's something that the jury would have ignored. He was cross-examined about that, though, right? And he just couldn't bring in another witness to— Yeah, I mean, Cain obviously denied—he said, I'm not a drug dealer. I don't choke women. Fine. Of course he's going to deny these things, but the defense counsel had witnesses who were prepared to come in and say, look, this is what he does. This is how he supports himself. He sells cocaine. That's why he hops from bar to bar. This is his reputation. We know this. He's been thrown out of a bar for the drug dealing and for choking a woman. And defense counsel really didn't articulate these things properly to the trial court. That's all the merits. So far you haven't said a word that I've heard about the procedural default issues, which is why you lost in the trial court. Well, I think when this court issued the certificate of appealability, it recognized that some of the claims that Mr. Scrimo has now brought before this court were not fully exhausted. But because he is presenting a credible claim of innocence, this court can excuse those defaults, and I think it should. Does he have to show that it's likely he would have been acquitted or that no reasonable jury could fail to find him guilty? What's the standard for that point? Well, I believe, and I could be mistaken, I think it's a reasonable probability. You think that's sufficient? I believe so, and I think had the jury heard this evidence, that the trial court had excluded erroneously. What do you rely on for that standard? That it's only a reasonable probability to excuse the procedure? I can't give the court a specific site. I think all of the Supreme Court precedent indicates that where there's a Sixth Amendment violation of the right of confrontation and the right to present evidence of a complete defense, I think that that is the standard. And is the default you're talking about the failure of trial counsel to present the right ground for admission or the failure of appellate counsel to properly pursue the appeal? I think both. I think but primarily the fault lies on trial counsel's shoulders. He had ample opportunities to persuade the trial court. Well, if it's trial counsel's fault, then wasn't the appellate counsel obliged to point that out, if that's the error that you rely on? Well, appellate counsel pointed out several of trial counsel's deficiencies in terms of his failure to cross-examine the prosecution's witnesses. I think he omitted the portion of the claim of presenting defense witnesses, which trial counsel attempted to do but then was shut down by the trial court. You said it was credibility, right? I'm sorry? His claim was it was credibility issues, not present defense issues. That's what the mistake was, you claim. I think trial counsel misargued the basis for the admission of the evidence, and at the same time the trial court misunderstood that very argument. Neither really hit the main point, was that we need this evidence to show that Cain, the only eyewitness who implicates Mr. Scrimo, he had the motive to murder this woman, not Scrimo. His motive was far more compelling than Scrimo's was. Back to the merits. On the default, if you're talking about the failure of appellate counsel to do his job, does New York require that to be brought by quorum nobis? Generally, well, I think had a quorum nobis motion been filed, I think it would have been summarily denied because appellate counsel had already made the argument in his appellate brief that trial counsel was ineffective. He didn't set forth all of the reasons why trial counsel was ineffective. So to then come back to the appellate division in state court and say, I missed one of the reasons, that would have been a waste of time. Why would it be a waste if that's the very nature of the ineffectiveness? He argued the wrong reason. Well, no, I mean appellate counsel had the right ground. He did argue ineffective trial counsel. He didn't specify each of the ineffective omissions by trial counsel. He didn't give the appellate court the right reason to reverse. He did, but he didn't give them all is what I'm saying. There were more that he could have addressed. The reason he gave wasn't the winning reason. Well, it could have been, but it just wasn't everything that he could have presented. I just wonder why you're so sure a state court, if given the proper remedy, would have said it's a loser when you're telling us here that it's really a winner. Well, because I know from experience that generally when a claim has been raised, when an ineffective trial counsel argument has been made on direct appeal in New York State, you give all the reasons why he was ineffective or she was ineffective. If you then don't cover them all and later on the defendant, let's say, in a pro se motion for quorum nobis relief or hires a new counsel to make this argument, the appellate division is going to look at it and the people are going to respond and say, he's already made an ineffective trial counsel argument. All he's doing is supplementing an argument that he's already lost. The appellate division is just never going to grant that kind of relief in that particular context. Well, if he did, in your view, make a sufficient challenge to the ineffectiveness of appellate counsel, then does that show cause here for the procedural default? Well, I think it could. I think it could. Well, it needs to for you to prevail, doesn't it? No, but I think that a credible claim of actual innocence excuses the default in any event. That's our position in this court. And if the standard is not just some evidence to put it in issue, but enough evidence that a reasonable jury could not fail to find him innocent, then do you have cause for default? I'm not sure I can answer that question. Honestly, it's a great question, but in any event, I've reserved time for rebuttal if I may. Thank you. We'll hear you then. Good morning, Your Honors. May it please the Court. My name is Kristen Connell. I'm an assistant district attorney in Nassau County, and I represent William Lee. Judge Newman, to draw my attention immediately to your line of inquiry, there certainly has never been cause even argued, let alone established, for the procedural default here. This specific claim of ineffective assistance of counsel was never made. Let's be clear. Trial counsel's default or appellate counsel's default? Neither, Judge. Ineffective assistance of counsel. I don't know which one you're talking about. Of course, Judge. Ineffective assistance of counsel has been raised before as defense counsel acknowledged, but never on these grounds. These grounds have never been made before, nor were they made in the district court below. And in Pinckney v. Dufresne, it was recognized that in order for a procedurally barred claim, a claim is procedurally barred by review by this court if it has never been made before, unless there is cause established or a credible and compelling claim of actual innocence. That is not what is before the court today. That is not the kind of extraordinary remedy or the extraordinary evidence that is before the court. It's extremely distinguishable from the evidence that was, say, before the Supreme Court in House v. Bell. In House v. Bell, the Supreme Court noted what kind of extraordinary evidence would be necessary. The court said you need to look for things like exculpatory scientific evidence, reliable witness testimony, critical physical evidence that was new, that was never introduced before. Your adversary says the standard is a little lower than that, as I understood him, simply whether the excluded evidence would have put the issue of guilt fairly in question for the jury. Well, Your Honor, the standard that I'm referring to is the standard for procedurally barred claim to be reviewed because of an actual innocence claim. The standard which you were discussing before with counsel for a claim like this, for relief if evidence has been unfairly excluded, first of all, there is a requirement, this court has recognized in Wade, that the decision below can't just be wrong. It needs to be unconstitutionally wrong. Why wasn't the trial court's ruling basically a denial of this man's defense? I mean, if the prosecutor calls a witness to show something that suggests the defendant committed the offense, the judge doesn't say, why are you doing this? Here, the defense counsel, it may have been imperfect, but I'm not sure he was incompetent, made it very plain at the outset what his defense was. Abstain. Cain, Cain, Cain, I think it's six times, maybe eight times. Cain. So why would the judge assume that these witnesses are just being offered to show that Cain is a bad guy, and not that Cain actually committed the murder? To take your points in turn, Your Honor. Go ahead. First, counsel today has, with regard to the ineffectiveness of counsel claim, counsel today said his defense was simple and obvious before the jury. So if the claim is, well, defense counsel didn't advance his arguments clearly enough so the trial court could understand what he was doing, that's disproven by the fact that everybody understood what he was doing. Assume that everybody understood what he was doing. Absolutely. He wasn't really ineffective, and that's a different route altogether here. Yes. The judge should well have understood that if the evidence was that Mr. Cain was a drug dealer who has in the past choked a customer, and the deceased, the victim, was a customer, I'm not sure what was mysterious here that a lawyer had to make plain. Your Honor. It looks as though the only witnesses that were offered in defense were disallowed. Your Honor, the defense that we are discussing was advanced and allowed to be advanced by defense counsel throughout the trial. With these witnesses aside, he was able to extensively cross-examine all of the different witnesses, including the police witnesses, such as Detective McHugh. I'm going to ask Mr. Cain, who, of course, would deny it. I mean, it's so elementary, it's hardly worth mentioning. Well, Your Honor, the court did, however, follow New York evidentiary rules by discounting this evidence. It wasn't evidence, even if we were to allow, even if the jury had heard those three witnesses. As Judge Stroni pointed out earlier, the woman who was in an altercation with Cain at the bar, that took place three years before the murder. Another witness, proposed witness, was merely going to testify about a drug sale that took place two years before the murder. These are all regarding Cain's bad reputation in the community. The third was going to, originally, in the first offer of proof, defense counsel said she was going to testify about the fact that Cain sold her drugs and she used them with the victim at some unspecified time. And then in the second offer of proof, that Cain had sold drugs to the victim. The evidence, as you point out, was not all that compelling. But the prosecution's evidence was arguably even weaker. He had a Leatherman tool, or if he had a pinking shears, that would be the same thing. Somebody, something had to cut the rope. No one testified that it was a Leatherman tool. And it's Cain's DNA that was under the victim's fingernails. And there's virtually no evidence that Mr. Scrimo did this. Except that he denied it, which a lot of scared people will do. Sure, Judge. However, there was other evidence in this case. First of all, Mr. Scrimo's DNA could not be excluded from a beer bottle that was found in the apartment. I don't call that overwhelming. I mean, yours can't either. Well, I think it might, Judge. That shows he was there. It does, and he admitted later to the police. It shows he was there. He wants to put in evidence that he didn't kill her. However, this evidence wouldn't have established that he didn't kill her, Judge. If it would have established it, it would have suggested the only other person in the world who might have committed this crime did it. That's what it would have shown, or at least tended to show. It would have shown, Judge, that Cain was perhaps a drug dealer. That doesn't make someone a murderer. There were other pieces of evidence that were. Can we agree that one of these two people killed this woman? It's likely, Judge. Likely? They were both there, yeah. Yes. The evidence was stronger that it was the defense. But it's one of these two people. Yes. Right? Not just likely, certain. Yes. Okay. So now some evidence is excluded that tends to point to the other man as the murderer, right? No, Judge. It doesn't point to it? We don't believe it does. No, Judge. It doesn't point to it. No, Judge. The evidence, this woman was strangled. Yes. And there was evidence that this person is a drug dealer who has previously strangled a woman who welched on a drug deal. You don't think that points to his guilt? He did not strangle another woman to death. He reached out, and if the witness had testified to what the offer of proof was, that he reached out in anger and grabbed her by the throat three years before the murder took place. That's not enough in New York. You know, under Molyneux, evidence of motive needs to be specific. It needs to, for evidence of extraneous crimes to be held competent in New York under the Evidentiality Law, it needs to involve this specific motive underlying the crime charge or motive common to all crimes. There wasn't a showing here that in the past he had taken, you know, wire and strangled numerous women to death or that anything else to show that there was any animus between the victim and— What reason did Scrimo have to kill this woman? Well, there is testimony that he was attempting to kiss her in the bar and she said, no, you're married. He then, he clearly was, you know, intended to go back to that apartment. He took a condom when offered from the 7-Eleven clerk that Judge Droney referenced before, and he said, don't tell my wife. He was seen arguing with the victim. He was the only one that night seen arguing with the victim. Kane was, they were the two, the three people. That's outside the, that's outside— That's outside her apartment, immediately before the murder was to have taken place. I'm not sure I remember how, but that was extremely weak and weakened at the trial. Francine Quinn, one of the witnesses who knew them from the bar community, testified that she saw him. She recognized the defendant by his build. She had just seen him in the bar, and she said that she saw him, not Kane, defendant. She didn't initially identify him. That might be what Your Honor is referring to. Well, if she knew him all that well and didn't initially identify him, then that would— She didn't initially identify him in a lineup in which she later said that all of the men looked the same to her. They were all very similar. I've seen the picture. They looked very similar. These are all very interesting arguments that you may get to present if this matter is sent back for a retrial, but that's really not our question. Our question is, is there a procedural default that prevents this person from giving you that chance to make those wonderful arguments that you'll make to the next jury? That's the question. Is there a procedural default to argue that these women— That should be excused on this record and on this showing that at least innocence is in issue. It's not a frivolous claim of innocence, surely, when the only other man in the world who could have done it is right there and has strangled a previous drug customer before. That's not frivolous evidence. Your Honor, we would still argue that this doesn't meet the threshold established by the Supreme Court for the kind of evidence needed to make a showing. Supreme Court, have you ever had a case where the only two people in the world who might have committed the crime were in the same room? But there's nothing—Your Honor, I'm so sorry. I don't mean to interrupt, but there's nothing here that's new. All of the arguments that are being made with regard to whether or not this evidence should have come in, they were made before. They were made in the trial court. They were made in New York State court. They were made before Judge Donnelly in the Eastern District. That's what the lawyer said. The lawyer did a terrible job. Can't you agree to that? I would not agree to that, Judge, because— Do you think he did a good job? He explicitly said to the court this isn't an issue of credibility. This is about the relationship between Cain and the victim. He said it repeatedly. And that's how you argue that Cain killed her? It's about the relationship between murderer to victim? That's the relationship? Well, according to defense counsel, his defense was simple and obvious. Everybody knew what the defense was. And so if he came before the judge, and everyone we've discussed earlier knows what the defense is, it's that it's Cain, not my client. And this is especially not relevant, Judge. This was especially collateral evidence. There were no drugs found in the victim's system. There were no drugs found. Extrinsic proof that that's evidence of a motive to fabricate is not collateral and shouldn't be excluded. Your Honor, the trial court here specifically cited PRIMO, the New York Court of Appeals, and said if you were going to call witnesses who were going to testify to his lack of credibility or likelihood to fabricate, I would allow those witnesses in. What you want to do is call these witnesses that are going to testify about the fact that he's a drug dealer. None of them were going to testify about anything having to do with the night in question. Two of them were going to testify about things that had nothing to do with the victim. And again, in a situation where there weren't drugs found in the victim's system, there weren't drugs found at the scene of the crime, no one that night, they were questioned about it. Counsel was allowed to question. But if she had an overdue debt for drugs, it doesn't necessarily assume that those drugs would still be in her system. But, Judge, that's entirely speculative. There was no evidence that she had any overdue debt. And there were two offers of proof. The evidence against Mrs. Cremo is entirely speculative except that Cain testified against him. Without Cain, I don't know what your evidence would be. The Leather Man tool? The Leather Man tool, his DNA not being excluded in the apartment, the fact that he changed his story seven different times, the fact that he was seen arguing with the victim immediately before the murder took place, was seen buying cigarettes only she buys before he went back to her apartment, took a condom and said, don't tell my wife. You think you would have even gotten to a jury without Cain's testimony? Yes. I do, Judge. I think the evidence was sufficiently compelling that we would have gotten to a jury. However, it shouldn't have been necessary because all of this evidence having to do with Cain and his purported drug activities, all of those things were collateral. They were properly excluded by the court following its own evidentiary law. And even if this court were to disagree, even if I can respect certainly your right to perhaps second guess the judge below, it doesn't rise to the level of the court disproportionately or arbitrarily applying New York State law. And that's the standard the defendant has to meet today. And he has not met it. If we thought trial counsel was ineffective, despite your best argument, was appellate counsel ineffective constitutionally? To begin, Judge, that hasn't been argued before about appellate counsel. However, no, if you were to find that trial counsel was ineffective, I'm just misunderstanding the question a little bit. If trial counsel was ineffective in the way he tried to get the exculpatory evidence in, then was appellate counsel ineffective in not properly pursuing the appeal? No, Judge, because appellate counsel isn't responsible for making every argument possible. Even non-frivolous arguments, as your Honor believes that would be, that still would not rise to the level of showing that his appeal would have been reversed. You know, this claim about the witnesses, this claim that this evidence was improperly excluded, this claim was before the appellate division in New York. And the appellate division said, made a ruling and said, anyway, the evidence is overwhelming, which really is an unsustainable observation. That was their take, Judge. That was their take. But I would also point out the fact that Judge Donnelly made a similar conclusion and said that in any event, this error would have been harmless. She had a similar conclusion. And, Your Honors, it's simply enough. Defendant has not met his burden today. There are a number of burdens he had to meet today. Defendant has not met any of them. And for that reason, we ask you to affirm the ruling below. Thank you. We'll hear rebuttal. Thank you again, Your Honor. When I say that the defense was simple and obvious, I'm speaking on my own behalf. To me, you have two men in a room with a victim. The victim is murdered. One of those two men obviously committed the murder. It's simple and obvious. If I'm representing Mr. Scrimo at his trial, I point the finger at Cain. Period. And I try to bring in every piece of evidence that I can to show what kind of person this Cain really is and what his motive was for killing the victim. And that my client essentially had no motive whatsoever. The motive that's attributed to Mr. Scrimo is that Ms. Williams insulted his wife's appearance and he just snapped and murdered her. I mean, anything is possible. Human nature is extremely variable, and I understand that weird things happen. If he was so sensitively respectful of his wife, I'm not sure what he was doing with the victim. That's a terrific question, which I won't even begin to respond to. And something Judge Droney, I think, had asked me before, and I wanted to respond to it. And as the prosecutor was arguing, I found the reference. Ms. Quinn, when she viewed Mr. Scrimo in the lineup, did not identify him. She identifies him the next day when his picture appears in the newspaper having been arrested for the murder of Ms. Williams. Then she tells the detective, oh, now I recognize him. He was the guy that I saw from like 50 feet away arguing with Ms. Williams that night. Did she see him in the bar too? I just don't remember. He was in the bar. She was in the bar with him too. Didn't she say I saw him in the bar with her? I believe so, and I believe there were several other witnesses who may not have identified Mr. Scrimo but certainly gave a description that fits his appearance. Ms. Quinn said that she saw Williams and Scrimo kissing in the bar. Yes. She testified to that. That was disputed because there were other witnesses who specifically denied it. If you're trying to argue that she sees him, she testified she saw him outside the door of her apartment, which was above the bar, by the way. Yes, it was above a bar. I'm not sure. 50 feet away. It's not like that's the only time she ever saw him. She knew who he was from that night in the bar with Williams and Scrimo. Yeah, but it raises the question why she was unable to identify him in the lineup that she viewed the day before she suddenly recognized his photo in the newspaper. I want to leave the court with one suggestion. I don't know if it's a fair one or not, but it occurred to me while I was reviewing this case. If Mr. Scrimo had gone to the police first and told the police, Cain murdered Ms. Williams, I don't think there's much question that Cain would have been arrested, he would have been prosecuted, and very likely convicted of this murder. The fact that Cain got the idea in his head first, I'm going to tell the police that Scrimo did it. If you just want to reverse the situation, I don't think there's any question that Cain would have been convicted of this murder, and some other attorney, maybe myself, would be standing here arguing that he wasn't proven guilty or his right. But Cain first told the cops that he didn't know anything about it. It wasn't right away he went to the police and said Scrimo did it. Only after they— He denied his involvement or knowledge, right? Of course, just like Mr. Scrimo did. They were in the same position, but when Cain was confronted by the detectives again and said, hey, we got your DNA, we got your fingerprints, and we got witnesses who saw you with Ms. Williams earlier that night, then he says, oh, okay, it was Scrimo who did it. An afterthought. Anything to get out from under. And something that the prosecutor alluded to, that defense counsel was able to cross-examine Cain and some of the other witnesses, that's not enough. You have the right to present a complete defense under the Sixth Amendment. Cross-examination is one component of that. Presenting witnesses is a second, very important component. That's what was denied in this case. Thank you. Thank you both. We'll reserve decision.